# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JOHNATHAN GOFF,                )
                                             )

                **Plaintiff,**       )

                                             )     **CIVIL ACTION**

**v.**                                    )

                                           )     **No. 12-1107-JWL**

**CAROLYN W. COLVIN,[1]**     )
**Acting Commissioner of Social Security,**     )

                                           )

                **Defendant.**      )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying Social Security disability(SSD) benefits and Supplemental Security income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding no error in the Commissioner's final decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING that decision.

## I.   Background

---

[1] On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Colvin is substituted for Commissioner Michael J. Astrue as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff applied for SSD and SSI on February 26, 2009, alleging disability beginning January 1, 1991. (R. 10, 144-57). The applications were denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (R. 10, 72-75, 94). Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ James Harty on July 14, 2010. (R. 10, 28-29). At the hearing, testimony was taken from Plaintiff and from a vocational expert. (R. 10, 28-71). At the end of the hearing, Plaintiff amended his onset date to January 1, 2008. (R. 10, 70).

On August 27, 2010, ALJ Harty issued a decision finding that although Plaintiff is unable to perform any of his past relevant work there are a significant number of other jobs available in the economy that he can perform. (R. 10-20). The ALJ concluded that Plaintiff is not disabled within the meaning of the Act, and denied his applications. (R. 20-21). Plaintiff sought Appeals Council review of the decision, and submitted a Representative Brief detailing his allegations of error in the decision. (R. 139-43). The Council made the Brief a part of the administrative record in this case and included the Brief in its consideration, but it found no reason to review the ALJ's decision and denied Plaintiff's request for review. (R. 1-5). Therefore, the ALJ's decision became the final decision of the Commissioner. (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006). Plaintiff now seeks judicial review of that decision. (Doc. 1).

## II.     Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is disabled only if he can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months. Knipe v. Heckler, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A)); accord, Lax, 489 F.3d at 1084. The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. §§ 404.1520, 416.920 (2010);[2] Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

---

[2]Because the Commissioner's decision was issued on August 27, 2010, all citations to the Code of Federal Regulations in this opinion refer to the 2010 edition of 20 C.F.R. Parts 400 to 499, revised as of April 1, 2010, unless otherwise indicated.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This

assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process--

determining whether claimant can perform past relevant work; and whether, considering

vocational factors of age, education, and work experience, claimant is able to perform

other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).

In steps one through four the burden is on Plaintiff to prove a disability that prevents

performance of past relevant work.  Blea, 466 F.3d 903, 907 (10th Cir. 2006); accord,

Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.

At step five, the burden shifts to the Commissioner to show that there are jobs in the

economy within Plaintiff's RFC.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir.

1999).

Plaintiff makes three claims of error, all dealing with the ALJ's RFC assessment.

He claims (1) that the ALJ erred in weighing the medical opinion of Plaintiff's treating

physician, Dr. Ta; (2) that the ALJ failed adequately to link the record evidence to the

RFC limitations assessed; and (3) that the ALJ erred in evaluating the credibility of

Plaintiff's allegations of symptoms resulting from his impairments.  The Commissioner

argues that the ALJ's RFC assessment was proper.  Specifically, she argues that the ALJ

properly evaluated the credibility of Plaintiff's allegations of symptoms, that he properly

considered the opinion evidence, and adequately discussed and supported his RFC

findings.  The court finds no error in the ALJ's decision.  Because evaluation of the

opinion evidence and of the credibility of Plaintiff's allegation of symptoms is a part of

every proper RFC assessment, the court begins by considering these two issues, before it

addresses Plaintiff's argument regarding whether the ALJ adequately linked the

limitations he assessed to the record evidence.

### III.    Evaluation of Dr. Ta's Opinion

In the first section of his brief entitled, "Treating Physician's Opinion," Plaintiff

claims that substantial evidence does not support the ALJ's determination to accord "little

weight" to the opinions of his treating physician, Dr. Ta.  (Pl. Br. 8-12).  Plaintiff claims

specifically, that the ALJ failed to indicate the evidence relied upon in discounting Dr.

Ta's opinion and did not cite to the longitudinal evidence he found to be inconsistent with

that opinion.  Id. at 8.  He claims that Dr. Ta's opinion is also supported by the opinion of

Mr. Randall, Dr. Ta's physician assistant, and by the opinion of Ms. Harper, a nurse-

practitioner who treated Plaintiff for his right wrist impairment.  Id. at 10-11.  The

Commissioner argues that the ALJ properly evaluated Dr. Ta's opinion, adopting many

limitations opined by Dr. Ta, and properly discounting the extreme limitations in standing

and sitting opined by Dr. Ta.  (Comm'r Br. 17-18).  She points out that the ALJ also

discounted Mr. Randall's opinions regarding Plaintiff's sitting, standing, and walking

limitations because they are not supported by treatment notes or diagnostic testing, and

that those limitations are contradicted by the opinion of nurse-practitioner Harper who

opined that Plaintiff has no limitations in sitting, standing, or walking.  (Comm'r Br. 19).

**A.      Standard for Evaluating a Treating Source Opinion**

"If [the Commissioner] find[s] that a treating source's opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is [(1)] well-supported by medically acceptable clinical and laboratory diagnostic techniques and is [(2)] not inconsistent with the other substantial evidence in [claimant's] case record, [the Commissioner] will give it controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); see also, Social Security Ruling (SSR) 96-2p, West's Soc. Sec. Reporting Serv., Rulings 111-15 (Supp. 2012) ("Giving Controlling Weight to Treating Source Medical Opinions").

The Tenth Circuit has explained the nature of the inquiry regarding a treating source's medical opinion.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (citing SSR 96-2p).  The ALJ determines "whether the opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques.'"  Id. at 1300 (quoting SSR 96-2p).  If the opinion is well-supported, the ALJ must also confirm that the opinion is "not inconsistent" with other "substantial evidence" in the record.  Id.  "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight."  Id.

SSR 96-2p, cited by the court in Watkins, explains that the term "substantial evidence" as used in determining whether a treating source opinion is worthy of "controlling weight" is given the same meaning as determined by the Supreme Court in Richardson v. Perales, 402 U.S. 389 (1971).  SSR 96-2, West's Soc. Sec. Reporting Serv., Rulings 113 (Supp. 2012).  The threshold for denying controlling weight is low.

Inconsistent evidence is "substantial evidence" precluding the award of "controlling weight," if it is "such relevant evidence as a reasonable mind would accept as adequate to support a conclusion that is contrary to the conclusion expressed in the [treating source's] medical opinion." Id.

If a treating source opinion is not given controlling weight, the inquiry does not end. Watkins, 350 F.3d at 1300. Such an opinion is "still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927." Id. Those factors are: (1) length of treatment relationship and frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1301; 20 C.F.R. §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Drapeau v. Massanari, 255 F.3d 1211, 1213 (10th Cir. 2001).

After considering the regulatory factors, the ALJ must give reasons in the decision for the weight he gives the treating source opinion, and "if the ALJ rejects the opinion completely, he must then give 'specific, legitimate reasons' for doing so." Watkins, 350 F.3d at 1301 (citing Miller v. Chater, 99 F.3d 972, 976 (10th Cir. 1996) (quoting Frey v. Bowen, 816 F.2d 508, 513 (10th Cir. 1987))). An ALJ's decision must be "sufficiently

articulated so that it is capable of meaningful review." <u>Spicer v. Barnhart</u>, 64 F. App'x 173, 177-78 (10th Cir. 2003).

**B.**     **The ALJ's Evaluation of Dr. Ta's Opinion**

The ALJ stated that he had "considered, but is unable to give controlling weight to, the opinion of the claimant's treating physician Ha Ta, M.D." (R. 16). He then summarized Dr. Ta's opinion form, and explained the weight to which he accorded it:

> Dr. Ha Ta submitted a Medical Source Statement, physical dated September 10, 2009, in which he opined that the claimant could lift 15 pounds occasionally and frequently; stand and/or walk 2 hours in an 8-hour work day; sit 2 hours in an 8-hour workday; only occasionally perform all postural and manipulative activities; with numerous environmental limitations (Exhibit 18F). Dr. Ta's Medical Source Statement [(1)] does not contain an explanation of specific reasons for these limitations. There is certainly [(2)] little to support the level of limitation reported by Dr. Ta. Additionally, Dr. Ta's opinion is [(3)] not consistent with the longitudinal record as a whole. Another of the claimant's treating sources, Tammy Harper, ARNP, completed a[] Medical Source Statement, physical, dated June 14, 2010, in which she opined that the claimant could lift 20 pounds occasionally and 15 pounds frequently; had no restrictions in standing, walking or sitting; a few postural and manipulative limitations; and no environmental restrictions (Exhibit 23F). Because Dr. [T]a's opinion lacks support by objective findings and is inconsistent with the record as a whole, it is given little weight.

(R. 17) (numbering added by court).

**C.**     **Discussion**

As the quotation above indicates, and contrary to Plaintiff's argument, the ALJ did state both his reasons for discounting Dr. Ta's opinion, and the weight accorded to that opinion. Moreover, he provided Ms. Harper's opinion as a specific example of other record evidence which is inconsistent with Dr. Ta's opinion. As the ALJ noted, Dr. Ta

opined that Plaintiff could stand and/or walk only 2 hours in an 8-hour work day and could sit only 2 hours in an 8-hour workday (R. 609), whereas Ms. Harper opined that Plaintiff was "not restricted" in sitting, standing, or walking. (R. 658). Plaintiff attempts to reduce the effect of Ms. Harper's opinion by arguing that she treated Plaintiff only for his wrist impairment. (Pl. Br. 11). Nonetheless, Ms. Harper did treat Plaintiff and formulated an opinion regarding sitting, standing, and walking based upon that treatment, Plaintiff submitted Ms. Harper's opinion into the record (R. 657), and the ALJ may properly rely upon it. As with much of Plaintiff's Brief, his argument that Ms. Harper's opinion was given too much weight is really an invitation for the court to reweigh the evidence and substitute its judgment for that of the ALJ. The court may not do so. Bowman, 511 F.3d at 1272; Hackett, 395 F.3d at 1172.

Plaintiff also argues that Dr. Ta's opinion should have been given greater weight because it is consistent with the opinion of Mr. Randall, Dr. Ta's physician assistant. (Pl. Br. 10-11). However, as Plaintiff admits, Mr. Randall is Dr. Ta's physician assistant, and it is not surprising that their opinions are largely consistent. Moreover, as the Commissioner points out, the ALJ also accorded "little weight" to Mr. Randall's opinion, and explained his reasons for doing so. (R. 17). Plaintiff points out that Dr. Ta and Mr. Randall treated him and provided opinions suggesting limitations in his functional capacities, and he concludes that "both opinions are supported by medical records and each opinion is consistent with the other." (Pl. Br. 11). However, Plaintiff points to no treatment record suggesting the specific limitations presented in the medical source

statements of Dr. Ta or Mr. Randall, and the court's review of the records does not reveal evidence requiring the limitations assessed by Dr. Ta and Mr. Randall or precluding the limitations assessed by the ALJ or Ms. Harper.  As the ALJ found, there is "little [in Dr. Ta's treatment records] to support the level of limitation reported by Dr. Ta."  (R. 17).  And a review of the remainder of the record, including Ms. Harper's opinion, confirms the ALJ's finding that "Dr. Ta's opinion is not consistent with the longitudinal record as a whole."  (R. 17).

The ALJ applied the correct legal standard to evaluate Dr. Ta's opinion, he stated his reasons for discounting the opinion, and substantial record evidence supports his evaluation.  The court finds no error in the evaluation of Dr. Ta's treating source opinion.

**IV.    Credibility Determination**

Plaintiff argues that the ALJ's credibility determination is erroneous "because the ALJ misinterpreted the symptoms of Goff's admittedly severe polymyositis, and arbitrarily determined that Goff was frequently non-compliant with medications."  (Pl. Br. 16).  He argues that because the ALJ found that Plaintiff's polymyositis is severe, the ALJ's finding that Plaintiff does not have any impairments to support Plaintiff's alleged difficulties with standing, sitting, and walking cannot stand.  (Pl. Br. 16-17).  Next, Plaintiff argues that although the ALJ's finding that Plaintiff is frequently non-compliant with medication is supported by Plaintiff's statement on a consultative examination that he stops taking his medications, the finding is erroneous because the ALJ failed to cite "any actual medical evidence documenting medication non-compliance."  Id. at 17.  He

11

concludes this argument by asserting that the ALJ may not rely on medication non-compliance without first assessing the four-factor test from <u>Frey</u>, 816 F.2d at 517 (hereinafter, the <u>Frey</u> test).  Finally, he argues that the ALJ "failed to consider the evidence of record which bolsters Goff's credibility."  (Pl. Br. 18).  The Commissioner argues that the ALJ applied the correct standard from <u>Luna v. Bowen</u>, 834 F.2d 161, 163-65 (10th Cir. 1987) to his credibility determination, discussed several of the applicable case law and regulatory factors in evaluating the credibility of Plaintiff's allegations of symptoms resulting from his impairments, and found that Plaintiff's allegations are not credible.  She argues that substantial record evidence supports the ALJ's determination.

### A.    Standard for Evaluating Credibility

An ALJ's credibility determinations are generally treated as binding on review. <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th Cir. 1990); <u>Broadbent v. Harris</u>, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. <u>Wilson</u>, 602 F.3d at 1144; <u>accord</u> <u>Hackett</u>, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters involving witness credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994); <u>but see</u> <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1490 (10th Cir. 1993) ("deference is not an absolute rule").  "However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of

findings.'" Wilson, 602 F.3d at 1144 (quoting Huston v. Bowen, 838 F.2d 1125, 1133

(10th Cir. 1988)); Hackett, 395 F.3d at 1173 (same).

The Tenth Circuit has explained the analysis for considering subjective testimony

regarding symptoms. Thompson, 987 F.2d at 1488 (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to
> establish disability. Before the ALJ need even consider any subjective
> evidence of pain, the claimant must first prove by objective medical
> evidence the existence of a pain-producing impairment that could
> reasonably be expected to produce the alleged disabling pain. This court
> has stated: The framework for the proper analysis of Claimant's evidence
> of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We
> must consider (1) whether Claimant established a pain-producing
> impairment by objective medical evidence; (2) if so, whether there is a
> "loose nexus" between the proven impairment and the Claimant's
> subjective allegations of pain; and (3) if so, whether, considering all the
> evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating symptoms, the court has recognized a non-exhaustive list of factors

which should be considered. Luna, 834 F.2d at 165-66; see also 20 C.F.R.

§§ 404.1529(c)(3), 416.929(c)(3). These factors include:

> the levels of medication and their effectiveness, the extensiveness of the
> attempts (medical or nonmedical) to obtain relief, the frequency of medical
> contacts, the nature of daily activities, subjective measures of credibility
> that are peculiarly within the judgment of the ALJ, the motivation of and
> relationship between the claimant and other witnesses, and the consistency
> or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489.

The Commissioner has promulgated regulations suggesting relevant factors to be

considered in evaluating credibility which overlap and expand upon the factors above, as

stated by the courts: Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

### B.    The ALJ's Consideration

At page six of the decision, the ALJ properly summarized the standard for evaluating the credibility of Plaintiff's allegation of symptoms, noting that he must determine both whether Plaintiff has a medically determinable impairment that could cause the symptoms alleged and whether the impairments present are reasonably responsible for the symptoms alleged, and if so, he must determine the credibility of Plaintiff's allegations of symptoms "based on a consideration of the entire case record." (R. 15). He then summarized Plaintiff's allegations of symptoms, the record evidence, and the medical opinions of record, and stated the weight accorded to each medical opinion. (R. 15-18). Finally, the ALJ found that Plaintiff's allegations "concerning the intensity, persistence and limiting effects of [his] symptoms and allegations of disability are not credible." (R. 18).

He based his finding of incredibility on his determination: (1) that Plaintiff's testimony of limitations is not consistent with the medical record, (2) that in his May 2009 examination Plaintiff did not even mention pain in his upper extremities, (3) that

Plaintiff reported difficulty standing, walking, and sitting, but "that there are no impairments in the record that would support such symptoms" (R. 18), (4) that there is no evidence of a diagnosis of intermittent explosive disorder, (5) that there is little record evidence of panic attacks, (6) that there is evidence Plaintiff is frequently non-compliant with medication, (7) that Plaintiff's alleged work-related explosions are caused by anxiety related to the stress of demands for speed and multitasking which have been accommodated in the RFC assessed, by restriction to simple, routine, repetitive work not involving a fast-paced production environment, (8) that Plaintiff has a financial interest in demonstrating disabling symptoms, and (9) that Plaintiff's allegations are exaggerated and inconsistent with the other record evidence. (R. 18-19).

### C.    Analysis

In the face of the ALJ's reliance on these nine reasons to find Plaintiff's allegations incredible, Plaintiff asserts error only in reasons three and six, and also argues that there is other record evidence supportive of his credibility which the ALJ failed to consider. With regard to reason three, Plaintiff argues that the ALJ found polymyositis is a severe impairment in this case, that polymyositis causes weakness of the skeletal muscles, and that remissions are rare in polymyositis. (Pl. Br. 17) (citing http://www.mayoclinic.com/health/polymyositis/DS00334/). Therefore, he implies that polymyositis is an impairment which is in the record and which would support such symptoms as alleged by Plaintiff--difficulty standing, walking, and sitting.

While it is clear that polymyositis in a particular case might cause difficulty standing, walking, and/or sitting, the court does not read reason number three so broadly as to assert that the record does not identify an impairment which might ever cause difficulty standing, walking, and/or sitting. As Plaintiff points out, the ALJ recognized that Plaintiff's polymyositis is a severe impairment. (R. 12). Moreover, the ALJ also recognized that Plaintiff's major problem with polymyositis was "atrophy to the right leg, mainly in the calf," but with no reported pain, normal gait and station, symmetrical reflexes and no difficulty with orthopedic maneuvers. (R. 16) (citing Ex. 12F) (Dr. Henderson's report of examination (R. 559-62)). A review of Dr. Henderson's report as cited by the ALJ reveals that Plaintiff had a 16-year history of polymyositis with which he was first diagnosed at age 13. (R. 559). The doctor stated that Plaintiff's main problem "has been the calf atrophy, right greater than left." Id. In discussing Plaintiff's polymyositis, and as noted by the ALJ, Dr. Henderson noted normal gait and station, no difficulty with orthopedic maneuvers, and symmetrical reflexes. Id. He also noted that Plaintiff expressed no pain on palpating the muscle groups, and that Plaintiff did not report a history of skin rash with the condition. Id. Although Plaintiff cites the Mayo Clinic for the proposition that remissions are rare with polymyositis, the web cite to which Plaintiff cites defines remissions as "periods during which symptoms spontaneously disappear." Available at

http://www.mayoclinic.com/health/polymyositis/DS00334/ (Last visited May 7, 2013).

Based upon that definition, the record does not indicate that Plaintiff's polymyositis is in remission.  However, as the ALJ noted, the record does not establish that Plaintiff has difficulty standing, walking, and sitting either.  Moreover, <u>The Merck Manual of Diagnosis and Therpy</u> states that the prognosis for polymyositis is "[r]elatively satisfactory and long remissions (even apparent recovery) occur, especially in children." <u>The Merck Manual of Diagnosis and Therpy</u> 436 (Mark H. Beers and Robert Berkow eds. 17th ed. 1999).  The court understands <u>The Merk Manual's</u> parenthetic reference to "even apparent recovery" as recognizing the rare occurrences "during which symptoms spontaneously disappear" as suggested by the Mayo Clinic's web site, and understands its reference to "long remissions . . . especially in children" to describe situations such as that present in this case where Plaintiff was 13-years-old when he was diagnosed with polymyositis, and where there is little indication in the record of the need for continuous, ongoing, or current treatment for active problems resulting from polymyositis.  As the ALJ implicitly found, the record does not establish that polymyositis causes Plaintiff difficulty with standing, walking, and sitting.  The court finds no error in the finding that "there are no impairments in the record that would support such symptoms."  (R. 18).

Plaintiff argues that the ALJ erred in finding that Plaintiff is frequently non-compliant with medication because he relied only upon Plaintiff's statement to a consultative psychologist that he "has to stop taking his medication because he does not like the way they make him feel," but failed to cite actual medical evidence showing medication non-compliance.  (Pl. Br. 17) (citing R. 553-57).  As Plaintiff admits, the

17

report of Dr. Hackney's psychological examination includes the psychologist's report that Plaintiff "says he always quits taking [medications] himself because he does not like the way they make him feel or he simply becomes noncompliant." (R. 555). Citing Dr. Hackney's report, the ALJ found that there is "evidence that the claimant is frequently non-compliant with his medications." (R. 19) (citing Ex. 11F (R. 554-56)). Plaintiff argues that Dr. Hackney's report should not be relied upon to discount Plaintiff's credibility because other medical records don't record Plaintiff's noncompliance, but that Plaintiff has reported to his medical providers that the medications cause problems, they do not help, and they have made him, variously, more violent, paranoid, sedated, and tired. (Pl. Br. 17). Plaintiff's argument highlights the point of the ALJ's credibility finding--that Plaintiff's medication management is a factor tending to indicate that his allegations of symptoms are not credible. If the facts are as Plaintiff reported to Dr. Hackney, that he quits taking medications because he doesn't like the way they make him feel or because he just becomes non-compliant, then Plaintiff's noncompliance indicates that the symptoms reported to his treating doctors are suspect. If the facts are as Plaintiff now asserts in his brief, that the medications do not help him, or cause detrimental side effects, then Plaintiff's reports to Dr. Hackney in his psychological examination are suspect. In either case, the inconsistency in Plaintiff's reports supports a finding that Plaintiff's credibility in general is suspect, and adds support (with eight other factors) to the ALJ's finding that Plaintiff's allegations of disabling symptoms are incredible.

Plaintiff's appeal to the ALJ's alleged failure to apply the <u>Frey</u> test does not aid his argument in this situation. As Plaintiff's Brief suggests, the Tenth Circuit has held that before a court may rely upon a claimant's failure to pursue treatment or to take medication as a reason to discount his credibility, it must consider four factors: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." <u>Frey</u>, 816, F.2d at 517. Here, consideration of the <u>Frey</u> test is largely irrelevant to the question of Plaintiff's credibility. Although the ALJ stated as his sixth reason for finding Plaintiff's allegations incredible that there is "evidence that the claimant is frequently non-compliant with his medications," the circumstances in which that finding was made, as discussed above, reveal that the significance of the finding rests not so much on noncompliance with medication as it does on the evidence--the inconsistency in Plaintiff's reporting to the consultative psychologist and to his treating healthcare providers. Therefore, in these circumstances any error in failing to apply the <u>Frey</u> test was harmless.

In his final credibility argument, Plaintiff asserts that the ALJ failed to consider record evidence which bolsters his credibility. Specifically, he argues that the ALJ did not consider his long history of numerous short-lived work attempts with low wages, that all of the healthcare providers who treated Plaintiff have suggested greater limitations than the ALJ, and that the ALJ failed to adequately consider Plaintiff's testimony of very restricted activities of daily living, and his testimony regarding symptoms. (Pl. Br. 18).

19

Although the ALJ did not specifically discuss Plaintiff's work history, he recognized the requirement to consider all of the record evidence, and stated frequently throughout his decision that his determination was based upon a consideration of all of the record evidence.  (R. 10, 11, 12, 14, 15, 18, 19).  The ALJ stated he considered all of the record evidence, and a court's general practice is "to take a lower tribunal at its word when it declares that it has considered a matter."  Hackett, 395 F.3d at 1173.  The court's review of a credibility determination is deferential, and Plaintiff provides no compelling reason for the court to deviate from its general practice in this case.

Contrary to Plaintiff's assertion that the opinions of all treating healthcare providers who have treated Plaintiff are more limiting than the RFC assessment of the ALJ, Ms. Harper's opinion is quite similar to that of the ALJ, and in many respects is less restrictive than the RFC assessed by the ALJ in this case.  This fact will be made more clear in the court's discussion of the RFC assessment below.

Finally, the very purpose of the credibility determination is to evaluate the weight of which a claimant's testimony is worthy.  Therefore, it is beyond reason to suggest that Plaintiff's testimony should have been given greater weight in the process of deciding the weight of which that very testimony is worthy.  Plaintiff has shown no error in the ALJ's credibility determination.

## V.     RFC Assessment

In his final allegation of error, Plaintiff claims the ALJ failed to provide a narrative discussion which sufficiently linked the record evidence to the limitations assessed in the

RFC.  He asserts "the ALJ did not provide a source for the physical limitations assessed in the RFC, the ALJ relied too heavily on the opinion of a one-time examining medical source and a non-examining medical source in assessing the mental RFC, and did not assign sufficient limitations to all of Goff's admitted severe impairments."  (Pl. Br. 12).

## A.       Standard for RFC Assessment

RFC is an assessment of the most a claimant can do on a regular and continuing basis despite his limitations.  20 C.F.R. §§ 404.1545(a), 416.945(a); see also, White, 287 F.3d at 906 n.2.  It is an administrative assessment, based on all of the evidence, of how plaintiff's impairments and related symptoms affect his ability to perform work related activities.  Id.; see also SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 126 (Supp. 2012)  ("The term 'residual functional capacity assessment' describes an adjudicator's findings about the ability of an individual to perform work-related activities."); SSR 96-8p, West's Soc. Sec. Reporting Serv., 144 (Supp. 2012) ("RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s) . . . may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities.").

Although an ALJ is not an acceptable medical source qualified to render a medical opinion, it is "the ALJ, not a physician, [who] is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing

SSR 96-5p, 1996 WL 374183, at *5 (July 1996)).  Because an RFC assessment is made

based on "all of the evidence in the record, not only the medical evidence, [it is] well

within the province of the ALJ."  <u>Dixon v. Apfel</u>, No. 98-5167, 1999 WL 651389, at *2

(10th Cir. Aug. 26, 1999).  Moreover, the final responsibility for determining RFC rests

with the Commissioner.  20 C.F.R. §§ 404.1527(e)(2), 404.1546, 416.927(e)(2), 416.946.

The Commissioner issued SSR 96-8p "[t]o state the Social Security

Administration's policies and policy interpretations regarding the assessment of residual

functional capacity (RFC) in initial claims for disability benefits."  West's Soc. Sec.

Reporting Serv., Rulings 143 (Supp. 2012).  That ruling includes narrative discussion

requirements for the RFC assessment.  <u>Id.</u> at 149.  The discussion is to cite specific

medical facts and nonmedical evidence to describe how the evidence supports each

conclusion, discuss how the plaintiff is able to perform sustained work activities, and

describe the maximum amount of each work activity the plaintiff can perform.  <u>Id.</u>  The

discussion must include consideration of the credibility of plaintiff's allegations of

symptoms and consideration of medical opinions regarding plaintiff's capabilities.  <u>Id.</u> at

149-50.  If the ALJ's RFC assessment conflicts with a medical source opinion, the ALJ

must explain why he did not adopt the opinion.  <u>Id.</u> at 150.

**B.**     **Discussion**

Plaintiff's RFC argument reflects a misunderstanding of the standard for RFC

assessment as presented above.  In asserting that the ALJ must provide a source for the

physical limitations assessed and that the ALJ failed to indicate how the medical evidence

and opinions support the limitations assessed, Plaintiff appears to be arguing that each RFC limitation assessed must be specifically linked to a medical opinion or to medical evidence upon which it is based. That is not the case. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012) (citing Howard, 379 F.3d at 949; Wall, 561 F.3d at 1068-69). The narrative discussion required in an RFC assessment by SSR 96-8p does not require citation to a medical opinion, or even to medical evidence in the administrative record for each RFC limitation assessed. Castillo v. Astrue, No. 10-1052, 2011 WL 13627, *11 (D. Kan. Jan. 4, 2011). "What is required is that the discussion describe how the evidence supports the RFC conclusions, and cite specific medical facts and nonmedical evidence supporting the RFC assessment." Id. See also, Thongleuth v. Astrue, No. 10-1101-JWL, 2011 WL 1303374, *13 (D. Kan. Apr. 4, 2011). There is no need in this case, or in any other, for the Commissioner to base the limitations in his RFC assessment upon specific statements in medical evidence or in opinions in the record. The ALJ's decision need only be "sufficiently articulated so that it is capable of meaningful review." Spicer v. Barnhart, 64 F. App'x 173, 177-78 (10th Cir. 2003). That criteria is met here.

As discussed above, the ALJ properly discounted the treating source medical opinion of Dr. Ta and the opinion of Mr. Randall. Moreover, in his narrative discussion the ALJ summarized the medical evidence, and the opinion evidence, and the other record evidence. (R. 13-19). Contrary to Plaintiff's allegations that the ALJ did not adequately

23

explain and support the weight accorded to the opinion of each healthcare provider, the decision reveals that the ALJ specifically stated the weight accorded each opinion and the reasons for according such weight. (R. 17-18) (discussing and according weight to the opinions of Dr. Ta, Mr. Randall, Ms. Harper, Mr. Ahrens, Dr. Hackney, and the state agency medical and psychological consultants).

Moreover, consideration of the RFC assessed by the ALJ in light of the opinion evidence and of the ALJ's discussion of that evidence reveals the basis for each of the restrictions assessed. The court is aware that the ALJ did not specifically state the linkages noted in this opinion. But, as discussed above, he is not required to do so. Rather, when viewed in context, the decision reveals these bases for the ALJ's RFC assessment. More is not required.

In making this evaluation of the evidence, it must be kept in mind that it has already been determined that the ALJ properly discounted the opinion of Dr. Ta. The occasional lifting restriction of 20 pounds is consistent with the opinions of Dr. Siemsen, Mr. Randall, and Ms. Harper, while the frequent lifting restriction of 15 pounds is consistent with the opinion of Dr. Siemsen and more restrictive than those of Dr. Ta, Mr. Randall, and Ms. Harper. The sit, stand, and walk restrictions of about 6 hours each are consistent with the opinion of Dr. Siemsen, and more restrictive than that of Ms. Harper. The push and pull restriction to 25 pounds is consistent with the opinion of Ms. Harper who treated Plaintiff's right upper extremity. The postural limitations are consistent with the opinions of Dr. Ta, Dr. Siemsen, and Mr. Randall while the limitation to occasional

gross handling with the right upper extremity is generally consistent with the opinion of Ms. Harper who treated Plaintiff's right upper extremity. Perhaps more than any other group of limitations, the environmental limitations assessed reveal that the ALJ considered Plaintiff's condition specifically and individually. Dr. Ta and Mr. Randall found Plaintiff was fairly severely limited in every environmental area considered, Ms. Harper found no environmental limitations, and Dr. Siemsen found Plaintiff restricted only from concentrated exposure to heat, cold, fumes, and dust, etc. The ALJ, on the other hand noted that Plaintiff had a history of shortness of breath and moderate emphysema, and restricted him from concentrated exposure to heat, cold, wetness, humidity, fumes, and dust, etc.

The mental limitations reflect similar consideration of the opinion evidence. The ALJ limited Plaintiff to simple, routine, repetitive tasks on account of Plaintiff's bipolar disorder. He explained his reasons for according little weight to Mr. Ahrens's opinion regarding mental limitations, and noted that Mr. Ahrens's opinion regarding marked limitations was excessive and could be adequately accommodated by the restrictions to simple work-related decisions with relatively few work place changes, and the restriction from a fast-paced production environment. Relatedly, he noted Dr. Hackney's opinion that Plaintiff is able to maintain adequate relationships, is able to understand and perform simple tasks, is able to sustain concentration, and is able to keep a work schedule with average performance demands, and consequently he restricted Plaintiff to only occasional interaction with supervisors, co-workers, and the general public.

As discussed herein, the ALJ's decision made an administrative RFC assessment based upon all of the record evidence, and provided a narrative discussion explaining his analysis. And, that discussion is capable of meaningful judicial review. Plaintiff has not shown error in the ALJ's RFC assessment.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 13th day of May 2013, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**